DEN EX DEM. RICHARD WOODEN v. JOSEPH L. SHOTWELL.

1. If a tract of land be divided into lots of unequal value, and these be sold to a number of purchasers at a uniform price, and are distributed among those purchasers by drawing or lot, and a deed given to each purchaser for the lot drawn by him, this transaction is a lottery, and the deed is void and conveys no title.

2. The recital of a money consideration in a deed does not prohibit an inquiry into the true consideration of the deed, for the purpose of showing the transaction on which it is founded illegal or fraudulent.

3. The rule of law is, that no *particeps criminis* can maintain an action founded on an illegal or immoral contract. But this rule does not prohibit the vendor of land, where the sale is founded on an illegal transaction, and the conveyance void, from recovering the land; he relies for its recovery on his prior untainted legal title, and the defendant cannot set up against that a title declared void by law.

This was an ejectment for lands in Somerset, and the cause coming on for trial before the Hon. James S. Nevius, it was agreed, by and between the parties, that the following statement of facts should be submitted to the Supreme Court, for its judgment thereupon:

In the month of November, 1835, Richard Wooden, being seized in fee simple of a tract of land in said township of Warren, about fifteen acres, he caused a survey to be made, and the said tract laid out into fifty-eight lots, and made a map of said lots, and numbered them on the map, from number one to number fifty-eight. In the same month of November, in the year 1835, he sold fifty-seven of said lots to different persons, and took from each purchaser a promissory note for seventy-five dollars, but did not give any deed for the lots at the time he took said notes. It being then understood and agreed, by and between said Wooden and the persons who had taken the fifty-seven lots, that each purchaser's lot should be determined in the following manner: that the numbers of each lot should be put in a box, on separate pieces of paper, and the names of the different persons who had given their notes for said lots in another box; and that the names and numbers of the lots were to be drawn out by indifferent persons, to be selected by said Wooden and the purchasers of the lots, and that such drawing should determine each purchaser's lot; and that after such drawing, he, Richard Wooden, would make the deeds for the number of the lot there drawn by the respective purchasers.

One of the lots was kept by Richard Wooden, and his lot was to be determined in the same way and manner, and at the same time. Alexander Shotwell, a son of Joseph L. Shotwell, who was then under twenty-one years of age, took one lot, and Joseph L. Shotwell gave his note to Richard Wooden for the lot taken by his son Alexander. In pursuance of the

arrangement so made by Richard Wooden for the sale of his said lots, and after he had received promissory notes of seventy-five dollars for each lot, to the number of fifty-seven, a drawing was had for each person's lot, in the presence of Richard Wooden and the purchasers, in the manner herein before stated, and at such drawing Alexander Shotwell drew lot number one ; which is the lot in controversy in this cause.

After such drawing and determination of each person's lot, Richard Wooden made deeds to the purchasers for the lots drawn by them, and for lot number one, drawn by Alexander Shotwell, he made a deed to Joseph L. Shotwell, and duly delivered the same to him ; which deed is dated November 19th, 1835, and recorded in Somerset clerk's office, in Liber S. of Deeds, folios 460 and 461, and which deed is admitted as a part of the state of this case.

The said Joseph L. Shotwell, after his son Alexander arrived at lawful age, to wit, on the fourteenth of April, 1841, conveyed said lot number one to the said Alexander Shotwell; which deed is dated April 14th, 1841, and is recorded in Somerset clerk's office, in Book X., folio 555, which is also admitted as evidence in this cause.

Said fifty-eight lots were of unequal value. Lot number one was considered worth, at the time of the drawing, at least six hundred dollars, another of the lots, on which was a barn, was considered worth, at the time of said drawing, at least three hundred dollars. A few of the lots were not considered to be worth, at the time of such drawing, over fifty dollars.

When Richard Wooden made said deed to Joseph L. Shotwell, he took the possession of said lot number one, and has held possession of the same ever since the date of said deed ; and since the conveyance by Joseph L. Shotwell to his son, Alexander Shotwell, the said Joseph has held possession of said lot, and occupied the same as the tenant of his son Alexander.

This action is brought by Richard Wooden to recover possession of said lot number one.

If, upon the foregoing statement, the court shall be of opin-

ion that the plaintiff is entitled to recover, then judgment shall be entered for the plaintiff, with costs.

If the court shall be of opinion that the plaintiff is not entitled to recover, then judgment shall be entered for the defendant, with costs.

Either party shall be at liberty to change this state of facts into a special verdict or bill of exceptions, and bring a writ of error within three months after judgment.

Argued before the CHIEF JUSTICE, and ELMER and POTTS, Justices, by *J. S. Green and W. Halsted*, for plaintiff, and *Vroom*, for defendant.

*J. S. Green*, for plaintiff.

The only query in this case is, whether this mode of distribution of lots is a lottery. There were fifty-eight lots, all of unequal value, one worth $600, others not more than $50. The right to a lot was sold at the uniform price of $75, and the lot of each purchaser was determined by drawing a *lot*. A *lottery* is an unequal distribution by *lot* of a fund contributed equally.

Lotteries are prohibited in New Jersey, and a conveyance of lands made in pursuance of such lottery declared void. *Rev. Stat.* 589, § 4; 4 *Wash. C. C. R.* 129, *Den* v. *Underwood;* 4 *S. & R.* 151, *Seidenbender* v. *Charles' Administrators*.

If this case is not within the very terms of the act, still it is against public policy and the policy and principle of the act, and therefore void. 3 *Term R.* 23; *Cowp.* 343; *Penn.* 887, *Vandoren* v. *Staats;* 2 *Green* 388; 5 *Halst.* 87, *Gulick* v. *Ward;* 5 *John. R.* 333.

A judgment obtained on one of these notes by Wooden against Thorn and Cory was reversed in this court on this ground. See minutes of April term, 1850; opinion by Justice Nevius.

*Vroom*, for defendant.

1. Is this in law a lottery? A lottery has always both blanks and prizes. Here it was a mere division of lands, sold out to different persons, as tenants in common, by lot. There was no

blank, or no nominal prize. The lowest lot was worth $50, one worth $600, and one worth $300. It is merely an irregular distribution. To constitute a lottery, there *must be blanks*.

By statute, partition of real estate is by lot; the shares are not equal in value always. Some difference and owelty not given. *Rev. Stat.* 102, § 3.

2. If it be a lottery, the deed was made in this case to a third person for consideration of *his* note of $75. 10 *Johns.* 115, *Jackson* v. *Harvey.*

The son was a minor, and could have no *legal* knowledge of the transaction. 8 *Term R.* 390, *Cuthbert* v. *Haley;* 2 *Wend.* 256.

3. The party implicated in this illegal transaction cannot have the benefit of the statute, and recover back the property after seventeen years acquiescence. The statute merely pronounces the deed void, it does not provide that the grantor may recover it back. The statute of usury declares contract void, but it provides expressly that money may be recovered back; it could not be recovered merely because the transaction was illegal and void. See *Rev. Stat.* 572, § 4, and 795; *Doug.* 451, *Lowere* v. *Bordham;* 1 *Camp.* 547, *Buck* v. *Buck; Comyn on Cont.* 371.

The term void here means *voidable,* and nothing more, not as if it had never been. Under usury act, mortgage given is not absolutely void. 2 *Caines* 167; 8 *T. R.* 575.

If grantee had been driven to his action for possession, he could not have maintained it; the contract cannot be enforced. When the plaintiff or party seeking remedy is in *pari delicto* he cannot recover. 2 *Caines* 147; *Cowper* 327, *Clark* v. *Shield; Ib.* 790, *Browning* v. *Morris; Penn.* 837, *Van Doren* v. *Staats.*

Here Wooden is the most guilty person. The provision of the law was not intended for the benefit of the party contriving the violation of it. And here he asks not only the land back, but valuable improvements with it.

Had this land gone into the hands of third parties, a *bona fide* purchaser, would this have avoided the deed?

Den ex dem. Wooden v. Shotwell.

*Halstead,* in reply.

This has been held to be a lottery ; it is not necessary that there should be blanks.   1 *S. & R.* 151.

Infants are liable on penal statutes and for crimes, and are not to be saved from consequences of violating the law.

In this statute, the word void is expressly applied to the conveyance, the executed contract.  ·The cases cited do not apply. The title was in Wooden, and could not pass out of him by a void deed.   2 *A. K. Marshall* 208 ; 2 *U. S. Dig., Lottery* 826.

And a voidable deed may be avoided by a party to it. *Hardres.* 47 ; *Bac. Abr.,* " *Void, Voidable* " *B.*

Even if there were a difference between an executed and executory contract for this purpose, here the contract is not executed, no money has been paid upon note.

GREEN, C. J.   The first question presented in this case is, whether the transaction in which the conveyance from the plaintiff to Joseph L. Shotwell originated, as set forth in the state of the case, constituted a *lottery,* within the meaning of the statute  of the suppression of lotteries.   Upon this point there is no room for doubt ; it was, both in substance and in form, a lottery.   It was not a plan adopted by the purchasers to make partition of the land purchased among themselves, but a device adopted by the vendor to attract adventurers by holding out the hope of ·extraordinary gain, and thus to effect a sale of the land.   The scheme was prepared and exhibited previous to the sale, and the purchaser paid his money, not for an equal undivided share of the land, as a tenant in common with the other purchasers, but in the hope and expectation of obtaining a valuable allotment, and thus enriching himself at the expense of others.   The prizes were distributed by lot.   The fact that the scheme contained no blanks, but that every adventurer was to receive something for his money, only rendered the device the more successful, and its results consequently the more injurious, without altering its essential character.   The statute, in its terms, includes as well lotteries for *lands* as for goods and chattels.   The transaction was a lottery within the contemplation of the statute, and conse-

quently every grant or conveyance of land made in pursuance of it is, by the terms of the statute, " invalid and void." This point is settled by the cases of *Den* v. *Underwood*, 4 *Wash. C. C. R.* 129, and *Seidenbender* v. *Charles' Administrators*, 4 *Serg. & R.* 151.

But, conceding that the transaction upon which the deed is founded constituted a lottery within the meaning of the act, the inquiry presents itself, whether that fact can be shown between these parties, and for the purposes of this trial.

The deed executed by the lessor of the plaintiff to Joseph L. Shotwell contains no allusion to the transaction in which the conveyance originated, but recites that it is made in consideration of $75, lawful money, paid by the grantee to the grantors. It is laid down by Jenkins (*Cent.* 4, *case* 20,) that *against a consideration*, alleged in the deed, no averment can be received. And although the American cases hold that the vendor, by the recital in the deed, is not estopped from showing that the consideration has not been paid, (in an action brought for the recovery of the purchase money) or that it is different in amount from that recited in the deed, they do not admit evidence to show that the consideration is essentially different from that recited in the deed, in order to defeat the effect and operation of the conveyance itself. It goes to subvert the entire transaction as well as to violate the established rules of evidence. 4 *Cruise's Dig.* 315, *Tit.* 32, *ch.* 20, § 52, *Greenleaf's ed., note* 1; *Ib.* 23, *Tit.* 32, *ch.* 2, § 38, *note* 1; *Grout* v. *Townsend*, 2 *Hill* 554; *McCrea* v. *Purmost*, 16 *Wend.* 460; *Morse* v. *Shattuck*, 4 *New Hamp.* 229.

But this rule of law has never been extended to prevent a party from showing that the deed is void for fraud or illegality. It is obvious, indeed, that the statute would be rendered a dead letter if the parties to an illegal transaction could evade the statute by a false recital in a bond, deed, or other instrument made in execution of the illegal contract. *Collins* v. *Blantem*, 2 *Wils.* 347; 1 *Smith's Lead. Cas.* 151; 1 *Greenl. Ev.* § 284.

The plaintiff is not estopped by the recital in the deed from

showing the illegality of the transaction in which the conveyance originated.

It is insisted that Joseph L. Shotwell, the original grantee of Wooden, was not a subscriber to the lottery, and that, as to him, the deed was made for a valuable pecuniary consideration. But the case shows that the present defendant, being then a minor, subscribed for one of the lots; that, being a minor and incapable of contracting, his father gave his own note for the lot prior to the drawing; that the deed was executed to the father subsequent to the drawing for the lot drawn by the son; and that, upon the son's coming of age, the father conveyed the lot to the son. It is obvious, upon this state of facts, that the deed made to the father was made in pursuance of the lottery. It is equally clear that the son does not stand in the position, nor can he claim the privilege of a *bona fide* purchaser for a valuable consideration, without notice of the illegal transaction on which the conveyance to his father was founded. The purchase of the lot by the son, the giving of a note by the father for the price, the drawing of the lottery, the conveyance to the father, and the subsequent conveyance by him to the son, constitute but parts of one and the same transaction. Admit that the son was a minor at the time of the purchase, it does not render the transaction legal, or the conveyance valid, if made to himself, much less can it give validity to a conveyance made to his father in pursuance of the illegal contract made by himself. If the defendant had had no participation whatever in the original illegal transaction, still it is obvious, from the case, that he had full knowledge of that transaction, and cannot, therefore, claim to be a *bona fide* purchaser for value, without notice of the defect in the title of his father. It is unnecessary, therefore, to consider whether the grantor, who has made a conveyance of land in pursuance of a lottery, will be permitted to recover it back from a *bona fide* purchaser for value without notice of the illegal transaction.

The defendant does not stand in that position.

Lastly, it is insisted that the plaintiff, having executed a deed in pursuance of the lottery, cannot recover it back; that the contract is executed; and that the court will not aid a party

Den ex dem. Wooden v. Shotwell.

to recover property when his right of action is based upon an illegal or immoral transaction. It cannot be denied that the plaintiff was the party principally guilty in the erection and drawing of the lottery ; that he is at least *in pari delicto* with the defendant ; and that, consequently, he is not entitled to the aid of the court in enforcing a claim founded on the illegal transaction.

The general maxim is undisputed, *in pari delicto, potior est conditio possidentis.* And the maxim is an effectual bar to the claim of a party who comes into a court of justice to enforce an illegal contract, or who asks the aid of a court to sustain a claim growing out of an illegal transaction. Thus when money or other personal property is paid by one of two parties to an illegal contract to the other, where both may be considered as *participes criminis*, an action cannot be maintained after the contract is executed to recover the money.

So money paid upon an illegal wager, or upon an illegal insurance, or for money lost at play, or by illegal gaming, cannot be recovered, except when specially authorized by statute. *Broom's Legal Maxims* 325.

In all these cases the claim of the plaintiff originates in the illegal transaction itself; and in order to recover, the plaintiff must show that the money passed into the hands of the defendant in pursuance or by virtue of such transaction.

But in the present case, neither the plaintiff's title to the land nor his right of recovery is in any wise founded upon the illegal transaction. He shows a valid title to the land prior to, and independent of, the existence of the lottery. To support his action, he shows his documentary title, but offers no evidence of the existence of a lottery. The defendant seeks to defend his possession by means of a conveyance founded on the lottery, and which the law declares to be void. He asks the aid of the court to enforce the illegal contract, and to protect his possession by a conveyance founded upon it.

The plaintiff's title is perfect, unless the court give legal effect and vitality to a deed which the statute declares invalid and void.

The plaintiff certainly comes into court with a bad grace,

seeking to shelter himself under the illegality of a contract, of which, so far as the case shows, he himself may have received the benefit. But in dealing with illegal contracts, courts do not and cannot look to the interests of those who are parties to the illegal transaction. The law regards the welfare of society as paramount, and in enforcing the law, courts cannot impair its efficiency or cripple its operation by considerations affecting the interests of those who are *particeps criminis. Salus populi suprema lex.*

Judgment for the defendant.

ELMER, J.   The defendant holds the property in dispute as the tenant of his son, Alexander Shotwell. But Alexander's title is derived from a deed made to him by his father, and his father's title being under the deed made by the lessor of the plaintiff, November 19th, 1835, if this last mentioned deed is wholly void, and passed no title to the defendant, then, of course, no title is shown in Alexander, under whom he holds. This depends upon the question, whether the transaction in pursuance of which the aforesaid deed was made was a lottery, within the meaning of the act entitled, " An act for suppressing of lotteries," (*Rev. Stat.* 590.) That it was a lottery, and, as such, within the prohibition of the act, has been already determined by this court, in the case of *Thorn and Cory* v. *Richard Wooden*, decided at April term, 1850, in a suit upon the notes given in the same transaction. With that decision I am entirely satisfied. It was in accordance with the ruling in the cases of *Den* v. *Underwood*, 4 *Wash. C. C. R.* 129, and of *Seidenbender* v. *Charles*, 4 *Serg. & R.* 151.

By the fourth section of the act for suppressing lotteries, it is enacted, " that every grant, bargain, sale, conveyance, or transfer of any goods, chattels, lands, tenements, hereditaments, or real estate, which shall be made in pursuance of any such lottery, is hereby declared to be invalid and void." It is insisted, however, that the lessor of the plaintiff, who himself made the lottery, and, in pursuance of it, executed the deed, cannot be permitted to claim the property in the face of his own deed. The argument is, that this is to be likened to the

case of an action to recover back money paid upon an illegal contract, in which it has been held that *portior est conditio defendentis*, and such actions have therefore failed. But the two cases are entirely dissimilar. Where money has been actually paid upon an immoral or illegal consideration, courts have held that it could not be recovered back, upon the principle that they would afford no aid to a person whose claim is based on such a transaction. In this case the court is not asked to aid a party whose claim is based upon, or in any way arises out of the illegal lottery. The evidence to entitle him to a recovery does not touch that transaction. We are asked simply to declare that to be invalid and void, which is made so by a plain unequivocal statute, intended not to benefit third persons, or merely innocent or injured parties, but intended to strike at and invalidate an illegal transaction in all its results and consequences. Unless the plaintiff, when his deed is produced against him, is in some way estopped from showing that it was illegal, and is therefore void, because to do so he must show his own criminality as well as that of the defendant, his good title must prevail over one that is bad. Undoubtedly there are many cases where a man will be concluded by his own illegal proceedings, if they have been acted upon by innocent parties, and is held upon grounds of public policy and good faith to be estopped from repudiating his own representations and acts. But this case does not come within that class. No innocent third parties are in any way implicated. As was said by Lord Mansfield in the case of *Holman* v. *Johnson*, (*Cowp.* 343), it is not for the sake of the defendant that the objection of illegality is allowed, but it is founded on general principles of policy. The statute has declared such a conveyance to be absolutely void, without reference to its operation upon the rights or interests of any one; and in order to effect the salutary objects of the act, it must be held void, even although the most guilty party profit by such a result. No case or principle has been produced that can authorize the court to disregard the plain words of the statute.

The English statute of maintenance declares that gifts or feoffments made by fraud or maintenance shall be holden for

none, and that the disseissees shall recover against the first disseissor their lands and damages without having regard to such alienations, so that they commence their suit within a year after the disseissin. It was rightly held that, by the true construction of this statute, the gift or feoffment was void only as against the disseissee, but good as between the feoffer and feoffee, because, by the words of the statute itself, it was plain that the intention was to prevent such alienations from injuring the disseissee, and not otherwise to render them void. *Bac. Abr. Tit. Maintenance E.; Co. Lit.* 369.

So the statutes against fraudulent conveyances, by their express terms, avoid such conveyances as against creditors and purchasers only; they are therefore held good and binding as between the parties themselves and their representatives. It is to be remarked, too, that such a construction best effects the beneficial objects of those acts. But it is otherwise with gaming securities; they are void as against the loser, even in the hands of innocent third persons. 8 *Price* 287; 7 *Bing.* 405. In the case of *Vaughn* v. *Whitcomb*, (5 *Bos. & Pull.* 413), which was an action of trover for a horse, it was held that the fact, that the defendant had won the horse of the plaintiff by tossing up this horse against two others, would not enable him to recover it back, solely because the statute, although it expressly avoided all securities, did not avoid the contract itself, and since the time within which the act authorized the party to recover back what he had lost was elapsed, his action was gone. Here it was agreed that one of the parties in the illegal gaming might have recovered his property on the strength of his original title, had the statute declared that the contract by which it was transferred was void. In the case before us, the statute does in express terms enact that the deed made in pursuance of a lottery is invalid and void. The consequence of such provision is that the original title stands good. If the maker of such a deed, or his representatives, cannot be permitted to show the facts which render it void, the great object of the act would be very imperfectly attained, if at all. In many cases, within the mischief intended to be prevented, it would be wholly inoperative.

In the case of *Edwards* v. *Dick* (4 *B. & Al.* 212), it was decided that the drawer and endorser of a bill of exchange, accepted by the loser of money won at play, was liable on his endorsement to an innocent party to whom he had transferred the bill in payment of a *bona fide* debt. In that case the holder of the bill did not seek to enforce it against the loser of the money, as to whom it was void, in the hands of the drawer or of any person claiming through him, however innocent. In the case before us the defendant is in a position analogous to that of a winner of property lost by gaming, to whom the property lost has been delivered or transferred by the loser. The object of the lottery act, like that of the act to prevent gaming, is to deprive the winner of his gains. To effect this in the most complete manner in the case of a lottery, the transfer itself is declared to be invalid and void. The case stands, and the decision must be the same as if no transfer whatever had been made. The defendant cannot avail himself even of the delivery of possession, which is itself void, and therefore as if it never took place. The lottery act in fact goes farther than our act to prevent gaming, (*Rev. Stat.* 573). In the latter act, it is declared that the conveyance of land, or transfer of personal property to satisfy a gaming debt, shall enure to the use of the heirs or legal representatives of the grantor, as if he had died intestate, while in the former, the conveyance and transfer are declared absolutely void. However hard, therefore, the case may seem to bear against the defendant, we have no alternative; we cannot repeal, and must not disregard the plain provisions of a positive statute. But the defendant has in truth no claim to any special indulgence. The note which he gave for the purchase money was not valid, and if he paid it, he did so without necessity. He must be presumed to have been apprized of the statute, which has long been on the statute book, and engaged in this illegal transaction with his eyes open to the consequences. I am of opinion that the plaintiff is entitled to judgment.

POTTS, J., concurred.

AFFIRMED, 4 *Zab.* 789.

CITED *in Huncke* v. *Francis*, 3 *Dutch.* 67; *Mulford* v. *Peterson*, 6 *Vr.* 134.