WILLIAM PENNINGTON et al., administrators of Philip Rafferty, deceased, appellants,

*v.*

JOSEPH C. TODD, respondent.

1. If a decree in chancery be partly in favor of a party and partly adverse to him, and he appeal from that portion which is adverse, this court, by a judgment of affirmance on such appeal, does not affirm that portion of the decree which was in favor of the appellant.

2. An appeal from a final decree in chancery brings up for review the whole case, with all interlocutory orders involving the merits of the controversy.

3. When an innocent member of a firm, established for the conduct of a lawful and moral business, calls upon his partner for a share of profits made in partnership transactions, the partner will not be absolved from the duty of dividing, on showing that he realized the profits by cheating the customers of the firm.

On appeal from a decree advised by Vice-Chancellor Van Fleet, made July 18th, 1889.

*Mr. Eugene Stevenson* and *Mr. Joseph D. Bedle,* for the appellants.

*Mr. John W. Griggs,* for the respondent.

The opinion of the court was delivered by

DIXON, J.

Joseph C. Todd, the complainant, and Philip Rafferty, whose administrators are defendants, formed a partnership in January, 1859, to conduct the business of manufacturing and selling machinery, and also a general commission and agency business for the purchase and sale of machinery and railroad supplies. In July, 1872, the partnership was dissolved by Mr. Rafferty's death.

During the existence of the partnership Mr. Rafferty carried on a part of its business secretly, without entering it on the books of the firm, and appropriated the profits thereof to his own use.

In March, 1876, the present bill was filed to obtain an account of this secret business and a share of the profits. In February, 1879, an account was decreed and a reference made to a master to state the same. In May, 1883, the master reported the account, which, after exceptions by the defendants, was substantially confirmed by final decree July 18th, 1889. Thereupon the defendants appealed to this court, contending that in the account the complainant was allowed a share of gains unlawfully made by Rafferty, and that this was erroneous.

It appears that the secret business consisted of transactions with certain California houses, in some of which Rafferty, while ostensibly acting as purchasing agent for these houses and charging them commissions for his services, billed the purchased goods to his principals at prices greater than the cost, and so defrauded them of the difference. In decreeing an account the court of chancery refused to meddle with these fraudulent gains, and directed the master to allow the complainant a share of only such profits as were lawfully made by his partner. *Todd* v. *Rafferty's Admrs., 3 Stew. Eq. 254.* The administrators appealed from the interlocutory decree for an account, insisting that they were not chargeable at all with respect to the secret business, but that decree was affirmed by this court for the reasons given in the court below. *Rafferty's Admrs.* v. *Todd, 7 Stew. Eq. 552.*

The affirmance of the interlocutory decree, on the appeal of the defendants, did not finally decide any equitable questions except such as were then passed on by this court. These could lawfully be only those features of the decree which might constitute a grievance to the appellants, and were therefore complained of by them. *Green* v. *Blackwell, 5 Stew. Eq. 768.* In fact, only those portions of the decree were considered. They did not embrace the clause exonerating the administrators from any obligation to account for gains unlawfully made by Rafferty.

Nor does the interlocutory decree itself finally dispose of such obligation, as the case now stands. It is a settled rule in this court that an appeal from a final decree in chancery brings up for review the whole case, with all interlocutory orders involving the merits of the controversy. *Crane* v. *DeCamp, 7 C. E. Gr.*

*614; Decker* v. *Ruckman, 1 Stew. Eq. 614; Clair* v. *Terhune, 8 Stew. Eq. 336.*

When, therefore, the administrators now appeal from the final decree, on the ground that they are thereby improperly charged with gains fraudulently made by Rafferty, we must consider and decide whether in equity they ought to be so charged.

The question, barely stated according to the conceded facts, is this : When an innocent member of a firm, established for the conduct of a lawful and moral business, calls upon his partner for a share of profits made in partnership transactions, is the partner absolved from the duty of dividing, if he shows that he realized the profits by cheating the customers of the firm ?

For an affirmative answer to this question no support is found in the cases of *Watson* v. *Murray, 8 C. E. Gr. 257*, and *Gregory* ads. *Wilson, 7 Vr. 315*, upon which alone the learned vice-chancellor relied in making the interlocutory decree. In the earlier case the very business, for the conduct of which the partnership existed, was deemed illegal or immoral, and in the later case the plaintiff participated in the unlawful design by which the money sued for was gained. And, so far as I have discovered, whenever any court has applied the maxim, "*ex turpi causa non oritur actio*," it has based its judgment on the turpitude of the plaintiff. " The objection," said Lord Mansfield, in *Holman* v. *Johnson, Cowp. 343*, " that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed ; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this : *ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes ; not for the sake of the

defendant, but because they will not lend their aid to such a plaintiff."

But when the plaintiff is blameless, and the contract on which he stands is legal and moral, no court has ever permitted a defendant to escape responsibility because of his own misconduct. "It is an indisputable proposition," says Mr. Broom (*Leg. Max. *352*), "that, as against an innocent party, no man shall set up his own iniquity as a defence any more than as a cause of action." The same sentiment was put in striking antitheses by Rooke, J., in *Farmer* v. *Russell, 1 Bos. & P. 296, 301*, to this effect: the doctrine, that if a defendant be innocent he shall be answerable, if guilty he shall be free, that his innocence shall work a loss to him, his guilt shall be his indemnity, is so monstrous as to be accounted for only on the ground of mutual privity in a foul transaction.

An examination of the authorities will show that, while courts have uniformly admitted the impolicy of aiding plaintiffs in furtherance of their tainted schemes, yet they have not been unmindful of the added immorality of defendants in seeking to wrong plaintiffs also because of their own turpitude, and hence they have been sometimes perhaps too ready to perceive distinctions between the plaintiff's claim and his improper acts in which it originated, so that a base defence might be defeated. This tendency received some adverse criticism in the New Jersey decisions above mentioned, on the ground that courts ought to proclaim the outlawry of such affairs from the first step to the last, not for the sake of the defendant who would cheat his associate in guilt, but in order to render the transactions as precarious and difficult as possible to those who might be inclined to enter upon them. This, undoubtedly, is the ultimate reason on which courts act, when they refuse to aid plaintiffs engaged in forbidden or nefarious enterprises.

But a denial of assistance to the present complainant can rest on no such basis. The law has no desire to deter parties from doing anything which the complainant has done. On the other hand, a refusal to aid him would furnish an incentive to such frauds as the defendants' intestate perpetrated ; for if a partner,

by showing that he has cheated the customers of the partnership in all his dealings with them, can retain all the profits, instead of only half, his temptations to iniquity are doubled.

There exists, then, no just reason for discharging the defendants from the duty of accounting to the complainant for all gains made by their intestate in the firm's business, according to the contract of partnership. That such contract embraced gains unlawfully realized is manifest from the incontrovertible proposition, that, on the receipt of such gains, the complainant, as well as his delinquent partner, became responsible for them to their defrauded customers. Not that the parties, in making the contract, actually contemplated the sharing of unlawful gains, but they did not expressly exclude such participation; and because the law implies in the contract the duty of sharing the burdens which such gains impose, it implies also mutuality in the benefits conferred—"*Qui sentit onus sentire debet et commodum.*"

The decree appealed from should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, DIXON, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, SMITH, WHITAKER—10.

*For reversal*—None.