[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 323 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 324 
Defendant moves for summary judgment against plaintiffs on the pleadings filed herein, plus certain proof by affidavit and otherwise, including the State of the Case in previous litigation between the same parties, which resulted in a judgment for defendant in the highest court of this State. [Stone v.Steinen, 22 N.J. Misc. 353; affirmed, 133 N.J.L. 16; affirmed, 133 N.J.L. 593 (E. A.).] The basis of the motion is, in brief, that the services, for which plaintiffs seek recovery, were the same as those on which they were denied recovery in the above litigation, and that such litigation isres judicata, barring recovery in the present suit.
This requires a comparison of the issues in the first suit and in the second, or present, suit. In the first place, as to the services themselves, plaintiffs' counsel frankly admitted on the argument that "plaintiffs never did anything of substance after starting the first suit." That the services in fact performed by plaintiff Alexander H. Stone — as counted on — were of identic character in both the first and second suits, further appears from a comparison of the recital of such services as set forth in the State of the Case [pp. 70-71] in the first suit, and in paragraph four of count one, as repeated in every other count, in the second suit.
As to the issues in the first suit, plaintiffs sought recovery on two written contracts between the parties, both dated December 31, 1942, and effective as of July 1, 1941, under *Page 325 
which plaintiffs claimed to have performed services for defendant in obtaining war contracts for it from the United States Navy during World War II. The suit was for two installments of salary, allegedly due plaintiffs on September 11, 1943, and September 18, 1943, the complaint having been filed September 21, 1943. The prime issue involved in the first suit was the legality of the contract and of the services performed thereunder. As to this, the trial court, sitting without a jury, held that "the contract sued on and the consideration on which it is based is void as against public policy." This decision was affirmed in turn both by the previous New Jersey Supreme Court and by the Court of Errors and Appeals. Our highest court alludes to the fact that the contract sued on was a "substitute" and "a mere blind" for a previous agreement "calling for a contingent fee." It recites the fact that "plaintiffs maintained no office in Washington save the residence where Alexander H. Stone lived;" that "there was no consecutive clerical force and no usual office equipment;" that Stone "had no technical training, and the work done was merely contact work with representatives of the Navy;" that "the provision for the continuance of the contract * * * seems indeed curious." This, with other facts, resulted in the finding that the contract, as sued on in both the first suit and in the fourth count of the second suit — was "a mere blind." As a consequence, the court concluded that. "The employment had an inherent tendency to promote a corrupt means to accomplish the end." As a consequence, our highest court affirmed the Supreme Court, which in turn affirmed the trial court's holding that "the contract sued on and the consideration on which it was based is void as against public policy." Obviously the consideration for defendant to pay plaintiffs under the contract sued on was the services performed by plaintiffs under the above circumstances.
Bear in mind, the first case does not hold that it is the mere contingent nature of plaintiffs' pay which renders the contract and the "consideration" for such payment illegal. The trial court expressly alludes to the fact that contingent *Page 326 
payments may under certain circumstances be legal. Nor is it the physical acts per se performed by plaintiffs with the Navy which the first suit finds to be illegal. Had these same acts been performed by "a bona fide established commercial or sales agency," and not from a mere house, instead of an office, without any regular clerical force, by a person of no technical training, paid in fact on a contingency, the conclusion might well have been otherwise. In short, it was the performance of these acts by plaintiffs, under the suspicious circumstances under which plaintiffs did them, which made them illegal as against public policy, because of their inherent tendency to "corrupt public officials or to swerve them from the conscientious and impartial discharge of their duties." [McCabe v. Kupper, 4 N.J. Super. 78. ] Indeed, as the McCabe case says, it is immaterial "that there was no proof that the parties actually contemplated or engaged in anything corrupt or immoral." The essence of the adjudication in the first suit was the inherently illegal character of both the contract and the services performed by plaintiffs under such circumstances.
In the second, the present suit, obviously framed to obtain a recovery for plaintiffs for the same kind of services performed by them as counted on in the first suit, the complaint is in four counts. In count one, on quantum meruit, the services for which recovery is sought are set forth in paragraph four. As previously shown, the character of the services performed was identic as involved in both suits. Indeed, count one of the present suit covers the same period of services as does suit one, plus services rendered earlier, from the beginning of the contract,i.e., July 1, 1941. If the services rendered in this previous period have been paid for, the present complaint therefor is of course sham.
Thus, except as to these earlier services, of which more later, the sole question as to count one is whether, since it is onquantum meruit, instead of being on contract, though between the same parties, for the same services, and under the same conditions, the doctrine of res judicata is applicable. *Page 327 
As to count two of the present suit, this simply asks for discovery, and other similar auxiliary relief, in aid of count one. It must stand or fall with count one.
As to count three, this seeks recovery for money alleged to have been paid defendant by the United States Government for the services in question, rendered by plaintiffs to defendant as recited in count one. While the affidavits filed indicate there may be an issue of fact as to whether these moneys have actually been paid by the government to defendant for plaintiffs, the same preliminary issue must be determined, i.e., whether the decision in the first suit bars recovery on this count as resjudicata of an illegal situation, where the court will aid neither wrongdoer.
Count four seeks recovery on the same contracts involved in the first suit, for the same services performed by plaintiffs for defendant, for the same period involved in such suit, plus the period thereafter to June 30, 1944. As seen above, no such services were in fact performed "after starting the first suit," the suit being started but three days after the salary sued for in the first suit was due. Again it is obvious that the sole substantial question is whether the decision in the first suit bars recovery on this count as res judicata.
Accordingly, we turn to the question, basic to the validity of all four counts in the present suit, i.e., whether the decision in the first suit is res judicata as to these counts, of such a nature as to bar plaintiffs' recovery thereon.
That it is against public policy to permit the same persons to litigate the same issue time after time is elemental. Accordingly, when such an issue has been litigated, there is an estoppel raised by the record against the further litigation of that issue between the same parties and privies. But this may be a "direct estoppel," or a "collateral estoppel." as it is termed by the American Law Institute's Restatement on Judgments. For instance, "Where a valid and final personal judgment is rendered on the merits in favor of the defendant, the plaintiff cannot thereafter maintain an action on the original cause of action." [Restatement, Judgments, § 48.] This is known as a direct estoppel or "an estoppel by judgment." *Page 328 
"In such a case the original cause of action is merged in the judgment." [Restatement, § 48, supra.]
But, "A judgment, whether in favor of the plaintiff or of the defendant, may have a further effect. In a subsequent action between the parties on a different claim, the judgment is conclusive as to issues raised in the subsequent action, if those issues were actually litigated and determined in the prior action." [Restatement, Judgments, § 45.] This is the so-called "collateral estoppel." The New Jersey authorities amply support the above principles. [City of Paterson v. Baker, 51 N.J. Eq. 49; Re Walsh, 80 N.J. Eq. 569 (E. A.); Miller v.Steiglitz, 113 N.J.L. 40 (E. A.); Phillips v. Phillips,118 N.J. Eq. 189; affirmed, 119 N.J. Eq. 497 (E. A.); ReTremper, 126 N.J. Eq. 276, 282; Schwartz v. International,126 N.J.L. 379, 382.]
Returning to the first and second actions between the present parties as here involved, we find that the principles of both direct and collateral estoppel are applicable.
Turning for clarity to count four of the second suit, not only are the parties the same, and the services the same, but the contracts are the same. There is a direct estoppel raised by the record against the plaintiffs' recovery thereon, save as to the period subsequent to the filing of the first suit. But as to this period, a collateral estoppel exists. Since plaintiffs admit they have performed no services since starting the first suit, such services — the consideration for their being paid the later installments of salary, for which they seek recovery in such count — are identic, in character at least, with the consideration and the contract involved in the first suit. As to this, the trial court in the first suit expressly held, "The contract sued on and the consideration on which it is based is void as against public policy." In other words, the basic issue presently considered in count four of the second suit was determined adversely to plaintiffs in the first suit. Thus, while plaintiffs had the right to seek recovery on this count in the second suit, since a portion of their cause of action thereon arose subsequent to the filing of the first suit, they are barred from recovery thereon by the principles of *Page 329 
collateral estoppel, above alluded to. For the previous court there held illegal the same character of services of plaintiffs, performed under the same circumstances, on the identic contract, between the identic parties.
Turning to count one of the present suit, on quantum meruit,
we find essentially the same situation. Outside of the recovery sought for the period preceding that covered in the first suit, treated later, recovery is here sought for the same services, rendered during the same period, under the same circumstances, by and between the same parties. Here, as in the case of count four, the only thing which prevents the creation of a direct estoppel is the fact that the cause of action is not the same. The difference in the cause of action here, however, is not as to the period of recovery involved, but as to the technical character of the cause of action itself — quantum meruit as compared with express contract. But again, exactly as in the case of count four, the principles of collateral estoppel apply to prevent plaintiffs' recovery on this differing cause of action, which they technically had a right to bring. For the same issues as to the invalidity of the same services performed by and between the same parties were directly decided in the first suit, as seen above. Indeed, as to the recovery sought in the second suit for the period preceding that covered in the first suit, since the character of the services performed by plaintiffs under the circumstances as previously noted, was the same in both suits, the principles of collateral estoppel would equally apply as a bar to recovery therefor in the present suit.
Plaintiffs' claim to the contrary is clearly incorrect. In the first place, the trial court, whose judgment was affirmed by our highest court, specifically held, as seen above, that, "The consideration on which it [the contract] is based is void as against public policy." Such being the case, "The law regards the welfare of society as paramount, and in enforcing the law, courts cannot impair its efficiency or cripple its operation by considerations affecting the interests of those who areparticeps criminis." This principle was laid down approximately a century ago by Chief Justice Green in Den *Page 330 ex dem. Wooden v. Shotwell, 23 N.J.L. 465, 474; affirmed,24 N.J.L. 789 (E. A.). In Hope v. Linden Park Ass'n,58 N.J.L. 628, 631 (E. A.), the court speaks of the "public policy of discouraging illegal and corrupt agreements, by holding them to be void and refusing all judicial aid between the parties to them." It certainly would not discourage "illegal contracts" nor refuse "all judicial aid between the parties to them" to give recovery on quantum meruit for the very services performed under such contracts. In Pennington v. Todd, 47 N.J. Eq. 569,572, the court gives the reason for the above rule as being "to render the transactions as precarious and difficult as possible to those who might be inclined to enter upon them." AccordAuditorium Kennel Club v. Atlantic City, 16 N.J. Misc. 354. That this is the general principle, see Williston, Contracts,Revised Edition, § 1740. "Nor can one who has illegally induced, or endeavored to induce, a bargain recover in quantum meruit
for money paid or services rendered." Among the cases cited in support of this proposition, the learned author alludes toGesellschaft, etc., v. Brown, 78 Fed.2d 410; certiorari
denied, 296 U.S. 618, where the attorney-plaintiff who held a contingent contract to obtain the return of property from the United States Government was, due to the illegality of his contract, denied the right to recover for services performed even on quantum meruit.
Nor are the cases cited by plaintiff to the contrary. In Lyndev. Lynde, 64 N.J. Eq. 736 (E. A.), the question which is here the issue was not even contested. There the wife did not question the right of her lawyer to payment of the reasonable value of his services. [See p. 739.] Moreover, the illegality of his act was not in the services performed by him, but in the mode of payment, i.e., in his retention of the alimony, which the court held to be of a character personal to the wife and nonassignable to him by her. In Smith v. Smith, 28 N.J.L. 208, recovery on quantum meruit was permitted because, contrary to the situation here, such recovery was consistent with the disaffirmance of the contract held to be invalid. In WeehawkenRealty Co. v. Hass, 13 N.J. Misc. *Page 331 
231, the court says, "While that [the second] count may represent the same services as those sued for in the first [which was dismissed] it does not so appear." Had it so appeared, as here, obviously the quantum meruit count would also have been dismissed. In Baca v. Padilla, 190 Pac. 730 (N. Mex.), the court adheres to the principle that, "If the services performed by the attorney are not themselves illegal, either intrinsically or by reason of the circumstances under which they are rendered, the attorney may recover upon a quantum meruit * * * (but) when the illegality, either in whole or in part, is in the thing which the party seeking to recover was to do, then there can be no recovery upon a quantum meruit." Obviously the illegality in the present case inheres "in the thing which the party seeking to recover was to do." In fact, plaintiffs themselves say, "We concede that if the services of the Stones were illegal, the law would leave them as they are, and would deny recovery." And plaintiff cites 71 C.J. 87, Work and Labor, § 46, to this effect: "Where the illegality is not in what plaintiff was to do, but in the manner in which he was to be compensated for doing a legal thing, he may recover in quantum meruit * * *. Where, however, the illegality inheres in the thing which the performer was to do, as where the essence or purpose of the contract was illegal, there can be no recovery even in quantum meruit." Here it was not the manner of plaintiffs' compensation, but the inherently corruptive tendency of the services they were to perform, under the suspicious circumstances they themselves created, which rendered such services essentially illegal.
Plaintiffs contend that the public policy in New Jersey in the above regard is out of step with that in other jurisdictions, particularly the District of Columbia, the lex loci actus,
which it claims should be applied here, rather than the lexfori — that in New Jersey. But irrespective of the fact that it is not for this court to question the decision of the highest court of this State, since this very point has been decided once and for all between the parties, such determination is binding asres judicata regardless. If erroneous, such error *Page 332 
should have been cured directly and immediately in that suit. Furthermore, it is a well-known principle of conflict of laws that courts will never enforce a claim against the public policy of their forum. [Goodrich, Conflict of Laws, 2d Edition, § 8;Wharton, Conflict of Laws, 3d Edition, § 4a; and seeGesellschaft, etc., v. Brown, supra, decided by the courts of the District of Columbia.] Plaintiffs are collaterally estopped by the record from recovery on the first count.
The second count, being purely auxiliary to the first, except so far as it is identic therewith, must fall with the first.
The third count seeks recovery for moneys allegedly paid defendant by the government for plaintiffs' use. But even assuming there is an issue of fact here, the parties are in paridelicto for having entered into the contracts in question as a "blind" to deceive the government. Furthermore, these contracts, and plaintiffs' services as rendered under the circumstances, are illegal in essence, as seen above. Since "the law regards the welfare of society as paramount," the courts "cannot impair its efficiency or cripple its operation by considerations affecting the interests of those who are particeps criminis." All judicial aid will accordingly be denied the parties to such illegal and corrupt agreement. [Den ex dem. Wooden v. Shotwell,supra; Hope v. Linden Park Ass'n., supra; Pennington v. Todd,supra; Auditorium Kennel Club v. Atlantic City, supra.]
Defendant's motion for summary judgment will be granted. *Page 333