## JOSEPH S. SMITH *vs.* THE ADMINISTRATORS OF JOHN S. SMITH DECEASED.

1. A son occupied a farm as tenant from year to year, which was owned by his father. The son erected buildings upon the land with the consent and approbation of the father, and upon the parol promise of the latter that he should have the farm, either by deed or devise, on the death of the father. *Held*, that the contract to transfer the land was within the statute of frauds, was void, and could not be the foundation of an action; *held also*, that the case did not fall within the principle, that no promise can be implied to pay for gratuitous service or services rendered in expectation of a legacy.

2. Where a party to an agreement, void by the statute of frauds, fails to perform it, the other party may recover back the amount paid on the contract. The contract being a nullity, no action can be maintained upon it, but the party may recover on the common counts.

3. In such cases the law raises, by implication, a promise to repay advances made on the faith of the contract.

4. Where a vendee, in possession of land under a parol agreement to purchase, makes improvements on the premises, he cannot recover of the vendor, in an action at law, the value of such improvements upon the refusal of the latter to perform the contract, the improvements being made for the benefit of the vendee, and not at the instance or for the benefit of the vendor.

5. But where the improvements are made by one in possession as tenant paying rent they enure to the benefit of the owner; and where made under the assurance by the owner that the tenant shall eventually have the pre-

Smith v. Administrators of Smith.

mises, either by deed or devise, and the tenant fails to acquire title by the fault of the owner, the tenant may recover the value of the improvements.

6. Where a son, while occupying land as tenant of his father, makes improvements on the premises expecting to receive a title to the land, and the father dies without giving him such title, the improvements enure to the benefit of the estate; and if the son, in a division of the estate, receive an equal share with the other heirs, and even has the land upon which the improvements are made, allotted to him as his share, the improvements being included in estimating the value of the land, he may recover of the estate the value of the improvements.

7. The improvements being part of the estate, no allowance can be made by the administrators or by the commissioners in dividing the land, to the person who made them, unless by agreement of all the heirs; and an agreement between the heirs to divide the estate equally, and providing that nothing in the agreement shall bar or release any claim of either of the heirs against the estate, will not bar the claim of the heir who has made the improvements, or prevent him from recovering their value from the estate.

---

This cause came before the court on the following state of the case, certified from the Warren Circuit.

This suit was brought by the plaintiff against the defendants, as administrators of the estate of John S. Smith, deceased, to recover the cost and expenses of erecting a dwelling house and cow shed by plaintiff upon a farm of the deceased, situate in the township of Blairstown, in the county of Warren. The declaration, besides several special counts, contained the ordinary common counts.

It appeared on the trial that the said deceased, in his lifetime, was the owner of several farms situate in the county of Warren; that the plaintiff, who was a son of the deceased, had lived on one of the said farms, as a tenant from year to year, for upwards of twenty-three years prior to the death of the said John S. Smith, first farming the same on shares, and afterwards at a low money rent, which he had paid regularly to within a short time of the death of his father; that the other farms of the deceased were also occupied by his other sons at low rents; that during the tenancy of the plaintiff the dwelling house on the said farm became greatly

s*

dilapidated and out of repair. It was testified to by the plaintiff's son and son-in-law, that in the year 1854 the plaintiff applied to the deceased to put up a new dwelling house and cow shed on the premises, and that the deceased said that the house was getting old, and a new one was needed; and that a cow shed was also needed, but that he was getting too old to build, and had no horses and wagon to build with, and told the plaintiff to go on and build a house and cow shed to suit himself; and that the plaintiff replied that he would not build on an uncertainty, and that the deceased told the plaintiff to go on and build, and the farm should be his: and it was further testified to by Mary Synder, that the deceased, in a conversation with her, said that the plaintiff wanted him to build a better house, and he thought the plaintiff ought to have a better house, but he was getting old, and had done all the building he would ever do—if the plaintiff wanted a better house he should build it himself; that the plaintiff had replied to that, that he, the plaintiff, did not want to build on an uncertainty, and he did not know who he was working for, and that he, the deceased, had told the plaintiff to go on and fix what he had a mind to—that he had left it to him.

It further appeared in evidence that, during the year 1855, the plaintiff built on the said farm, at his own expense, a dwelling house and cow shed at a considerable cost, and continued to occupy the farm as a tenant from year to year until the death of his father; that the said John S. Smith died, in December, 1856, intestate, without conveying or devising the said farm to the plaintiff, and that the said farm, with the other lands of the deceased, descended to his six heirs at law, of whom the plaintiff was one.

It did not appear in evidence that the said agreement was reduced to writing, or that the said deceased specified the size of the buildings or the materials to be used, but it was shown in evidence that the deceased was occasion-

ally on the premises while the house was being built, and that he expressed himself pleased with the manner in which the plaintiff was putting up the building; and it further appeared that the said house was a suitable one for the farm.

It also appeared in evidence that the said farm, as occupied by plaintiff when the said buildings were erected, contained about one hundred acres of land, and was worth, without the plaintiff's improvements, from $3000 to $3500, and that the estimated cost of the said building was from $600 to $1200.

It further appeared in evidence that, after the death of the said John S. Smith, a dispute arose concerning the granting of letters of administration upon his estate, and that, for the purpose of settling this dispute and dividing the real estate of the deceased among his heirs, the heirs at law and widow of deceased entered into the following agreement:

" Memorandum of an agreement, made this sixteenth day of February, eighteen hundred and fifty-seven, between Rachel Smith, widow of John S. Smith, late of the township of Blairstown, in the county of Warren, and state of New Jersey, deceased, and Joseph Smith, Lewis Smith, Benjamin L. Smith, John Snover, and Mary his wife, formerly Mary Smith, John Smith, of the said county, and Elisha Smith of McComb county, Michigan, all heirs at law of the said John S. Smith, deceased. Whereas disputes have arisen between the said widow and the said heirs at law of said deceased in relation to the administration on the estate of said deceased and the assignment of dower to the widow of said deceased, and the division of the real estate of said deceased among the heirs at law of said deceased, for the purpose of amicably settling the said disputes between the said widow and heirs, and among the said heirs themselves, the said Rachel Smith, Joseph Smith, Lewis Smith, Benjamin L. Smith, John Snover, and Mary his wife, John Smith, and

Elisha Smith for the consideration of the sum of one dollar to each by the other in hand paid, have mutually agreed to a settlement of the said disputes as follows :

*First.* It is mutually agreed that the said Rachel Smith, the widow of the deceased, and William L. Hoagland, of the township of Blairstown shall be appointed joint administrators of the estate of the said deceased, giving bond for the due execution of their offices according to law.

*Second.* It is mutually agreed between the parties that Aaron O. Bartow and John H. Blair, of Knowlton, and John Shannon, of Blairstown, in said county, shall assign and set off to the widow of the said deceased her dower in the lands of the said deceased, and that any assignment of dower to said widow, made in writing under the hands of the said Aaron O. Bartow, John H. Blair, and John Shannon, or a majority of them, on or before the thirtieth day of April next (1857) shall be binding and conclusive upon the said parties ; and that the said widow shall enjoy the said lands so set off or assigned by the said Aaron O. Bartow, John H. Blair, and John Shannon, and hold the same for her dower in the same manner and for the same estate as she would be entitled to do in case the same had been set off by any court having jurisdiction of the same ; and the said Rachel Smith shall release and remise all her right and claim to the other lands of the said deceased to the heirs at law of the said deceased, as the same may be divided among them as hereinafter specified.

*Third.* It is mutually agreed, by and between the said heirs at law of the said deceased, that the residue of the said lands of the said deceased which may not be set off and assigned to the widow of the said deceased as aforesaid shall be partitioned off and divided among the said heirs at law in equal shares, by the said Aaron O. Bartow, John H. Blair, and John Shannon, and that the award or determination of the said Aaron O. Bartow, John H.

Blair, and John Shannon, made under their hands, or the hands of a majority of them, making a partition or division of the said last named lands among the heirs of said de-ceased, and specifying the part or parcel thereof to be held by each one, shall be binding and conclusive on the said heirs, and that the said heirs shall thereafter each hold in severalty the part or share of the said lands so as aforesaid set off and assigned to him or her, and shall mutually ex-ecute, each to the other, such releases and conveyances as may be necessary and proper to vest in each the portion or parcel of said lands so as aforesaid determined and specified to belong to each in fee simple : and it is further mutually agreed, by and between the said heirs, that the said parti-tion or division shall be made on or before the thirtieth day of April next (1857), and that as soon as mutual releases shall be exchanged as aforesaid, each shall be entitled to enter immediately into the possession and enjoyment of the part or parcel so assigned and set off to him or her, reserv-ing, however, to the persons now in the occupation of the said premises the right which they now have in the crops standing or growing on the said premises ; provided how-ever, that the share or part assigned and set off as aforesaid to Mary Snover, wife of said John Snover, shall be so as-signed and specified, by the said Aaron O. Bartow, John H. Blair, and John Shannon, that the same shall extend and reach to some one of the highways upon which the said lands lie.

*Fourth.* It is also mutually agreed, by and between the said heirs at law, that if the said partition or division shall be made among the said heirs at law as aforesaid, and it shall subsequently be discovered that the personal estate of the said deceased shall not be sufficient to pay debts and expenses, so that it shall be necessary to make application to the court for an order to sell lands, that then and in that case each of the said heirs shall and will pay to the admin-istrators of the said deceased an equal one-sixth part of the deficit, and that the payment of the same by each one shall

be and remain a charge upon the share of such one in the said lands; and further, that the expense of the said partition and assignment of dower shall be paid equally by the said heirs.

*Fifth.* It is further agreed that nothing in this agreement shall bar or release any claim, debt, or demand which either of the said heirs shall have against the said estate of the said deceased; and for the due performance of all and singular the matters and things herein contained, the parties hereto bind themselves, each for himself or herself, but not for the other, to the others, their heirs, executors, administrators firmly by these presents."

Which agreement was signed and sealed by all the parties therein named.

It further appeared in evidence that, in pursuance of the above agreement, the said Aaron O. Bartow, John H. Blair, and John Shannon set off the dower of the widow, and made a division of the residue of the lands of deceased among the said heirs, and that in that division they assigned set off to the plaintiff twenty-seven acres and fifty-eight hundredths from the said farm, and that the buildings, for the recovery of the cost of which this suit was brought, were situate on the part assigned to plaintiff in the said division; and that in that division the commissioners made to the plaintiff no allowance for the buildings, but valued the lands and buildings together as part of the estate of the deceased, and that the plaintiff afterwards sold the portion set off to him for the sum of $2000.

The jury rendered a verdict for defendant by direction of the court. The court granted a rule to show cause why there should not be a new trial.

I, Edward W. Whelpley, judge of the Circuit Court of the county of Warren, certify the case to the Supreme Court, for its advisory opinion upon the following points:

1. Whether there was any evidence in the cause from which the jury could lawfully infer a promise by John S.

Smith deceased, or his administrators, since his death, to pay for the improvements in money or out of the personal estate of said Smith.

2. Whether the agreement to leave the plaintiff the farm, or give it to him by will or otherwise, was within the statute of frauds.

3. Whether plaintiff entering into the agreement set out, and receiving from the part set off to him more than the cost of his improvements, does not prevent the arising of any implied promise by the administrators to pay for the improvements which might have been raised if the intestate had, and the plaintiff lost, the value of his labor and materials.

4. Whether the vesting of the land on which the buildings were erected in the plaintiff by descent and the division made is not so far a performance of the intestate's contract with the plaintiff as to be a bar to any action for the nonperformance of the contract, or to recover back the consideration of it, to wit, the value of the plaintiff's work, labor, and materials put and expended upon the land of which he had the possession.

Argued at November term, 1859, before the CHIEF JUSTICE and Justices HAINES, VREDENBURGH, and VAN DYKE.

*Depue* and *Shipman*, for plaintiffs.

*Kennedy* and *Sherrard*, for defendants.

The opinion of the court was delivered by the

CHIEF JUSTICE. The contract proved upon the trial of this case, or which the evidence tended to prove, was clearly within the statute of frauds and perjuries. It was a contract for the transfer of an interest in land. The plaintiff, who was tenant from year to year of his father (the defendant's intestate), erected new buildings upon the demised premises upon the authority of his father,

who told the plaintiff "to go on and build, and the farm should be his," or, as another witness testified, "to go on and fix what he had a mind to—he had left it to him." The evidence in the cause would have warranted the jury in finding that the plaintiff erected the buildings with the consent and approbation of his father, upon his express promise that the farm should be his upon his father's death, by deed or devise. The contract to transfer the land, being within the statute of frauds, was void, and cannot form the foundation of an action. The plaintiff, therefore, clearly could not sue upon the special contract.

May the jury lawfully infer a promise to pay for the improvements in money out of the personal estate of the deceased? It is clear, from the evidence, that the erection of the buildings was not a voluntary service, nor a service rendered relying upon the generosity of the intestate to make compensation. The son expressly refused to proceed with the buildings till he had his father's promise that the farm should be his. The case, therefore, does not fall within the familiar principle, that no promise can be implied to pay for gratuitous services or services rendered in expectation of a legacy. *Grandin* v. *Reading*, 2 *Stock.* 370 ; *Johnson* v. *Hubbell*, 2 *Stock.* 332 ; *Jacobson* v. *Ex'rs of Le Grange*, 3 *Johns. R.* 199 ; *Martin* v. *Wright*, 13 *Wend.* 460 ; *Little* v. *Dawson*, 4 *Dall.* 111.

But will the law raise an implied promise to pay money when there was an express promise to pay in land? The answer is, that the promise to pay in land was void, and therefore no promise If the plaintiff had erected the buildings upon the intestate's land at his request, the law would have implied a promise to pay for them. The plaintiff is in no worse situation because the defendant made an express promise to pay for the services in a particular mode, which promise is itself a nullity. The true principle, says Mr. Chief Just. Nelson, is this : "The contract being void and incapable of enforcement in a court of law, the party paying the money or rendering the ser-

vices in pursuance thereof may treat it as a nullity, and recover the money or the value of the services rendered under the common counts. This is the universal rule in cases where the contract is void for any cause not illegal, if the defendant be in default." *King* v. *Brown*, 2 *Hill* 486.

The principle seems to be perfectly well settled, and is sustained by very numerous authorities, that where a party to an agreement void by the statute of frauds fails to execute it, the price advanced, or the value of the article delivered in part performance of the contract, whether in money, labor, or chattels, may be recovered back. *Mavor* v. *Pyne*, 3 *Bing*. 285; *Gray* v. *Hill*, *Ryan & Moody* 42; *Gillet* v. *Maynard*, 5 *Johns. Rep*. 85 *and cases cited in note a; Shute* v. *Dorr*, 5 *Wend*. 204; *Lockwood* v. *Barnes*, 3 *Hill* 128; *Abbott* v. *Draper*, 4 *Denio* 51.

In all such cases the law raises, by implication, a promise to repay advances made upon the faith of the contract, and for which no consideration has been paid. If, as a consideration for the improvement, the intestate had agreed to devise to the plaintiff a different tract of land from that upon which the improvement was made the case would be clear of difficulty. But as the improvement is made upon the farm agreed to be devised, it may be urged that the improvement was made not for the benefit of the intestate, but for the plaintiff's own benefit, inasmuch as he resided upon the farm during his life, and expected to receive it after his death.

It is true that where the vendee in possession under a parol agreement for the purchase of land makes improvements upon the premises, he cannot recover the value of such improvements in an action at law upon the refusal of the vendor to fulfil the contract. *Gillet* v. *Maynard*, 5 *Johns. Rep*. 85; *Shreve* v. *Grimes*, 4 *Littell's Rep*. 224.

The improvements in such case are not made at the instance or request of the vendee, nor for his benefit, but for the benefit of the party making them. The law, there-

Smith *v.* Administrators of Smith.

fore, will imply no promise by the vendee to pay for them. But this case does not fall within that principle. The plaintiff was not in possession under a contract for the land, but as tenant from year to year paying rent. The improvements enured to the benefit of the intestate. He might, upon the completion of the improvements, have turned the plaintiff out of possession, or demanded and received an increased rent for the premises during his life. He was instrumental in having the improvements made. The plaintiff refused to make them until he had his father's promise that the land should eventually be his. The improvements were not only made by the procurement of the intestate, and for his use, but his estate has actually received the increased value of the improvements made by the money and the labor of the plaintiff. There seems no good reason, either in law or equity, why the jury may not infer a promise to pay for them. If it be objected that the evidence in the cause admits of a different interpretation, and that the terms of the contract were different from those above stated, the answer is, that what is really proved by the evidence was a question of fact, and should have been submitted to the jury.

3. The legal rights of the plaintiff under the contract were in nowise affected by the agreement entered into among the heirs, after the death of John S. Smith, for the settlement of the intestate's estate. It was expressly stipulated that nothing in the agreement should bar or release any claim which either of the heirs might have against the estate.

4. Neither the vesting of the title to the land upon which the buildings were erected in the plaintiff, as one of the heirs at law of the intestate, nor the assignment of a portion of the farm upon which the buildings were erected to the plaintiff under the agreement among the heirs, can be regarded as a performance of the intestate's contract with the plaintiff. The plain sense of the agreement was, that the plaintiff should be paid for his im-

provements; that their value should be added to his portion of the estate; that he should have the farm and the buildings. The agreement among the heirs contemplates an equal division of the intestate's estate among all the heirs, allowing the plaintiff no compensation whatever for his improvements more than he would have received as an heir at law had the improvements been made by him gratuitously and exclusively for his father's benefit. An allowance, it is true, might have been made in the division of the estate by the commissioners, with the assent of the heirs, to the plaintiff for his improvements. But it is not contemplated in the agreement, and whether made or not, would be a question of fact for the jury.

The verdict should be set aside; and a new trial granted and the Circuit Court should be advised accordingly.

CITED *in Updike* v. *Ten Breock*, 3 *Vr.* 115, 117; *Freeman* v. *Headley*, 3 *Vr.* 231; *Freeman* v. *Headley*, 4 *Vr.* 538.