20 N.J. Super. 191 (1952)
89 A.2d 448
MURRAY A. PERLBERG, PLAINTIFF-APPELLANT,
v.
ARTHUR GEMINDER AND DAVID GEMINDER, INDIVIDUALLY AND TRADING AS WESTCOTT PRODUCTS, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 1952.
Decided June 11, 1952.
*193 Before Judges McGEEHAN, JAYNE and GOLDMANN.
Mr. Jerome S. Lieb argued the cause for appellant (Messrs. Harkavy and Lieb, attorneys).
Mr. Herman E. Dultz argued the cause for respondents (Messrs. Dultz, Miller & Zeller, attorneys).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Plaintiff appeals from a judgment of dismissal entered in favor of the defendants at the close of plaintiff's case. The substantial question to be decided is *194 whether the trial court erred in not submitting to the jury the issue of the reasonable value of plaintiff's services. The contention that there was also error in taking from the jury the question of whether plaintiff was entitled to damages by reason of defendants' fraud and deceit, was abandoned at the argument.
The background of the action is derived from plaintiff's testimony. For some time defendants had discussed with him some of the problems of their bulk nut business. On June 7, 1950, the talks culminated in his becoming associated with defendants under an oral agreement that a separate company would be established for the sale and distribution of nuts packaged in smaller quantities, the plaintiff to have a 50 per cent interest in that business and to receive a salary of $100 a week plus expenses. It was agreed that until production began his salary would be only $50 a week, and this amount was regularly paid him until October, 1950.
The agreement was modified in September, 1950, to give plaintiff a one-third interest in the proposed company. The marketing of packaged nuts began that month. There was a further modification of the agreement in October to provide for the establishment of a separate packaged nut division of the defendant company, plaintiff to have a one-third and the individual defendants a two-thirds interest in such enterprise, and plaintiff to receive a salary of $80 a week plus $20 expenses for a trial period of one year. Defendants' attorney was to prepare the final draft of the agreement for execution by all the parties. Such written agreement was never executed. However, plaintiff's salary was changed from $50 to $80 a week, plus $20 expenses.
At the end of October plaintiff made a 1,315-mile motor trip to Albany, Utica and Buffalo, N.Y., and Pittsburgh, Harrisburg and Reading, Pa., contacting food brokers to handle the packaged nuts. In mid-December he and defendants discussed the auditing of the business records. Differences arose over the calculation of the sales and net profits, and on December 22, 1950, plaintiff quit the business.
*195 Plaintiff now claims that relying on defendants' promises, he had associated himself with them and performed services in establishing the packaged nut division, including supervising the design of the packages, setting up a sales organization and getting the new line into production. He admits receiving the weekly salary payments orally agreed upon, but alleges he has not been paid the promised share of the profits. He sued, demanding judgment of $50,000 for the reasonable value of his services and damages sustained because of defendants' fraud and deceit and their breach of agreement. Plaintiff further sought an accounting of all profits made from the packaged nut division.
Defendants' motion for judgment of dismissal at the conclusion of plaintiff's case necessarily admits the truth of plaintiff's evidence and every inference of fact that can logically and legitimately be drawn therefrom in favor of the plaintiff. Cauco v. Galante, 6 N.J. 128, 132 (1951). The challenge of such a motion is that upon the facts and the law the plaintiff has shown no right to relief. Rule 3:41-2.
Recovery in this action was not sought on the basis of an express contract, but on a quantum meruit for the reasonable value of the services furnished defendants. Both parties proceeded on the assumption that if there was any agreement, it was unenforceable under the statute of frauds because not in writing and therefore void. R.S. 25:1-5(e). The law is settled that in an action for services performed under a contract invalid by the statute, the plaintiff cannot sue upon the contract; he can only seek his remedy upon a quantum meruit for the value of the services rendered. McElroy v. Ludlum, 32 N.J. Eq. 828, 833 (E. & A. 1880); 2 Williston on Contracts (Rev. ed. 1936), § 536, p. 1553; Restatement, Contracts, § 355 (Illustrations of subsection 1).
In order to be entitled to recovery of the reasonable value of his services the plaintiff must in the circumstances of this case prove such value. 58 Am. Jur., Work and Labor, § 62, p. 560. Plaintiff did not resort to the terms of the *196 alleged agreement as competent evidence to affect the amount of the compensation recoverable. Our courts have held that where a contract is within the statute of frauds, it can no more be used for the purpose of influencing the amount of the recovery than it can be made the foundation of the action. McElroy v. Ludlum, above, at page 837.
Plaintiff attempted to establish the reasonable value of the services rendered during his six-month period with the defendants by his own testimony and that of an expert witness, Hilsee. The court sustained defendants' objection to plaintiff's testifying on this aspect of the case.
Counsel for the plaintiff interposed no formal objection to the ruling, but merely said: "I think it is evidential * * * I have an expert here also but I think this man himself qualifies as an expert." When the court observed, "I don't think so," counsel went on to another question. Rule 3:46 makes exceptions to rulings unnecessary but it still requires a party promptly and clearly to make known to the court his objection to its ruling and the grounds therefor. Otherwise the question of the correctness of the ruling may not for the first time be raised on appeal. Cf. Raab v. American Casualty Co., 4 N.J. 303, 306 (1950); Anderson v. Modica, 4 N.J. 383, 390 (1950).
But giving the plaintiff the benefit of a liberal reading of the quoted colloquy so as to spell out a proper objection to the ruling, the trial judge did not commit reversible error in refusing to let plaintiff testify. There is nothing beyond his own claim to ten years' experience as an executive to sustain his contention that he qualified as an expert. Cross-examination elicited that plaintiff had done promotional work in the motel business, from September, 1949, to the time he joined the defendants in June 1950. Before that he tested the possibilities of merchandising fishing poles in the supermarket field. The trial judge was not impressed with this background and his ruling will not be disturbed.
The qualifications of experts are left to the discretion of the court, and its decision is conclusive unless clearly *197 shown to be erroneous as a matter of law. Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141 (1950); cf. Cowdrick v. Pennsylvania R.R. Co., 132 N.J.L. 131, 139 (E. & A. 1944). It has repeatedly been declared that the decision upon the experiential qualifications of witnesses should be left to the determination of the trial court. 2 Wigmore on Evidence (3d ed. 1940), § 561, p. 641.
Defendants objected to the qualifications of the expert Hilsee. He testified that he had been a business broker for the past four years, buying and selling businesses, and that prior thereto he had for 20 years managed a company which distributed standard brands of foods, during which time he became familiar with the retail merchandising of packaged foods. The court in the proper exercise of its discretion allowed him to testify.
Hilsee declared that he knew nothing of plaintiff's previous history. Counsel for the plaintiff asked him to assume that plaintiff had spent 10 years in the general sales business, that he had associated himself with defendants in June 1950 and undertook to merchandise packaged nuts (an activity in which they had not engaged up to that time), that he helped an advertising company design the packages, that he made a trip and engaged food brokers to distribute defendants' packaged products, and that he conducted the sales end of the business in such a way that total sales for a three-month period were $6,900. He was then asked: "What would you say was the fair and reasonable weekly salary for services of that type," and Hilsee replied: "That man is worth anywhere between $7,500 and $15,000 a year. * * * Depending on his production, net profit, and how much he can earn. No salary is any investment as far as I am concerned as long as a man shows betterment and profit in his salary [sic]." After extended colloquy counsel for the plaintiff asked the witness to consider a further fact in connection with the hypothetical question  that the net profit for three months was $1,100. Hilsee answered, "That man was worth the money in my opinion."
*198 Viewed strictly, Hilsee's testimony was objectionable for it did not deal with the legitimate purpose of the inquiry, the reasonable value of the services plaintiff actually rendered. But strict consideration aside, the testimony was otherwise vague, general and uninformative. A wide salary range was established but it was made to depend on such shifting factors as production, net profit and earning power. Hilsee's testimony was not sufficiently instructive to enable a jury intelligently and fairly to place a reasonable value upon the services claimed to have been rendered.
There was, therefore, no error in the trial court's refusal to submit to the jury the question of the reasonable value of plaintiff's services. Judgment affirmed.