43 N.J. Super. 95 (1956)
127 A.2d 897
ALBERT NAWYN AND PETER BRAUNIUS, INDIVIDUALLY AND PARTNERS T/A NAWYN AND BRAUNIUS LAUNDRY SERVICE, PLAINTIFFS-RESPONDENTS,
v.
WILLIAM KUCHKUDA AND CORRECT LAUNDRY COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1956.
Decided December 7, 1956.
*98 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Joseph P. Winberry argued the cause for plaintiffs-respondents.
Mr. Julius E. Kramer argued the cause for defendant-appellant Correct Laundry Company (Messrs. Chandless, Weller & Kramer, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
The defendant, Correct Laundry Company, appeals from a judgment for $3,471.55 taken against it by the plaintiffs in the Bergen County District Court. With the consent of the attorneys, the case had been transferred to that court from the Superior Court. With their consent also, the case was dismissed as to the defendant, William Kuchkuda.
Nine counts are set up in the complaint, but we need concern ourselves only with the fifth count. The facts are somewhat involved, and for some of them we have had to go to the 437-page transcript of testimony, much of which has not been included in the appendix.
In July 1949 the plaintiff Nawyn and the defendant Correct entered into a written agreement (designated in the briefs as Contract No. 1), whereby Nawyn agreed to buy from Correct a laundry route and a laundry truck for $5,000, payable $500 through a note due September 22, 1949 and the balance at the rate of $25 per week. Between July 1949 and February 1, 1951 Nawyn paid Correct on account of *99 his obligation under the contract $2,315 of principal and $56.55 of interest. Further, as provided by the terms of this contract, Nawyn collected the work on the route, turned it over to Correct and retained as compensation 33% of Correct's retail rate for the work delivered.
In May 1950 the plaintiff Braunius entered into an oral agreement (designated Contract No. 2) with Correct for the purchase of another route and truck for $7,000 on very similar terms. Between May 1950 and February 2, 1951 Braunius paid Correct $1,100 on account of his obligation under this contract. Furthermore, he collected and turned over to Correct the work on the route, retaining, as Nawyn did, 33% of Correct's retail rate.
The fifth count is based on Contract No. 3. According to the findings of the trial court, this was an oral agreement made in February 1951 between Correct, on the one hand, and the plaintiffs Nawyn and Braunius as partners, on the other hand, under which the plaintiffs were to buy the two routes and trucks above mentioned and two additional routes and three (as Correct admits in a counterclaim and the parties say in their briefs, although the testimony is by no means clear whether it was two or three) additional trucks, all for a total price of $19,000. The court found, in effect, that Contract No. 3 supplanted Contracts Nos. 1 and 2 and that the parties agreed that the foregoing payments totalling $3,471.55, including the payment of $56.55 of interest, were to be applied against the $19,000. Correct denies that there was any mutual assent among the parties as to Contract No. 3. Incidentally Correct does not deal with this interest of $56.55. Hence we will not do so either.
Assuming that the parties entered into a third contract in February 1951, we still are confronted with a dispute as to what were its terms. The plaintiffs contended below that under Contract No. 3 the parties agreed that the balance of the $19,000 due under the contract (after crediting thereon the $3,471.55) was to be paid off by applying thereto the sum of $100 a week. This sum, so plaintiffs claim, was to be credited to them from and after February 1951 by way *100 of compensation for services allegedly rendered by Nawyn from then on while assisting Correct in the management of its shop. The trial court, however, rejected plaintiffs' claim, holding that they had not established, through a preponderance of the evidence, that they were entitled to any compensation for these services. There is no appeal from this ruling.
One other alleged provision of Contract No. 3 requires consideration. For a year and eight months after February 1951 the plaintiffs operated the four routes, dividing the proceeds therefrom with Correct on this basis, namely, 35% to themselves and 65% to Correct, and not, as under Contracts Nos. 1 and 2, on a 33%-67% basis. Plaintiffs claim that this arrangement was part of Contract No. 3.
Correct however says  and this is one of its important contentions  that this arrangement was a part of a so-called bobtailer's agreement it made with the plaintiffs in February 1951. Correct claims that under another phase of this bobtailer's agreement, the plaintiffs in February 1951 rented (in effect) each of the five trucks from it for $500 down and $12.50 a week. The court rejected this claim, apparently not believing the testimony offered on Correct's behalf. There are two circumstances which go to support the court's conclusion here, quite beyond this matter of credibility. Under Contracts Nos. 1 and 2, Nawyn and Braunius each of them had had the use of a truck without being chargeable for any rental therefor unless he defaulted under the contract (see paragraph 8 of Contract No. 1, herein discussed)  or unless certain other contingencies occurred, none of which are pertinent here. That being so, it seems rather unlikely (for the proofs by no means indicate that the plaintiffs had met with any financial difficulties in February 1951) that plaintiffs voluntarily in February 1951 applied out of the $3,471.55 the sum of $1,000 just to continue with the use of these two trucks which they had theretofore been using rent free. The second circumstance is perhaps of more significance. Correct never made any claim or demand upon plaintiffs for this $12.50 a week as to each of the *101 five trucks apparently until September 1952  notwithstanding that in a counterclaim interposed in this case it seeks the recovery of $6,760, the amount by which these payments had allegedly gotten into arrears by September 11, 1952. We see no sufficient reason for disturbing the trial court's finding that the parties did not enter into the rental agreement stated. Under that finding the counterclaim for $6,760, of course, falls.
Correct contends next that there is no proof that under Contract No. 3 the four routes and five trucks were to be sold for $19,000 (as found by the court), or for any other specified price. However, it is to be observed in that connection that on or about April 1, 1952 plaintiffs tried to settle their obligation under that contract by paying Correct $11,000 in cash. This amount, plus the $3,471.55, plus the sum of $100 a week claimed to be due for Nawyn's managerial services for the 60 weeks from February 1, 1951 to April 1, 1952 (assuming he claimed to be entitled to such a credit for every week) totals $20,471.55.
Correct's point here seems to be that there was no meeting of minds on Contract No. 3. On this question there was a sharp conflict in the proofs, but we do not think we need review them. For the issue here is not whether redress may be had upon the contract, but whether plaintiffs may recover the $3,471.55 by way of restitution. Correct claims that this issue was not presented by the pleadings. However, we think it was raised by this statement in the pretrial order: "plaintiffs claim reimbursement for all moneys paid by them on account of the contract."
On this question of reimbursement, Correct seems to overlook the authorities holding that even if the arrangement between the parties never reached the status of a binding contract, nevertheless plaintiffs may be entitled to restitution. Thus, if the $3,471.55 was applied by them upon a supposed contract under the mistaken belief that Correct had assented to it, or if it was applied by them in the course of negotiations that never ripened into a contract, plaintiffs still may recover it. Restatement, Restitution § *102 15; Corbin, Contracts, § 599 (1951); Bernstein v. Rosenzweig, 1 N.J. Super. 48, 52 (App. Div. 1948). Hence the mere fact that there was no contract is not dispositive of the case.
Addressing ourselves, then, to the issue in this case, as above stated, namely, whether plaintiffs are entitled to restitution of the $3,471.55, we should observe, first, that it seems fairly evident that they and Correct all supposed that they had entered into some new arrangement in February 1951, rendering it unnecessary for plaintiffs to continue the payment of $25 a week that each of them had theretofore agreed to make to Correct under Contracts Nos. 1 and 2. Indeed, Correct admits it never demanded $25 a week from either of the plaintiffs after February 1, 1951. More important than that, Correct admits that until this action was started, plaintiffs never demanded the return of the $3,471.55 which they had paid on Contracts Nos. 1 and 2 by February 2, 1951. It may be deduced, therefore, from the circumstances that plaintiffs intended to apply the $3,471.55 on some arrangement they had with Correct as to the four routes and the five trucks, an arrangement which all the parties in fact seem to have carried out without the slightest question on the part of any of them for at least 14 months from February 1951. We think there was clearly sufficient basis here for quasi-contractual relief by way of restitution, whether or not Contract No. 3 was adequately spelled out by the parties.
Correct next argues that plaintiffs are not entitled to restitution of the amounts they paid under Contract No. 3, since there has been part performance of that contract. But the very authority cited for that proposition, 5 Williston, Contracts, § 1460, at least in the third edition (Correct apparently quotes from some earlier edition) indicates clearly that the law in this country is to the contrary.
Correct's argument on this last point, however, leads to other questions not presented by it, namely, whether it should be given compensation by the plaintiffs on some quantum meruit basis for the use plaintiffs have had over the years *103 of the five trucks owned by Correct. Plaintiffs paid for the gas, oil, repairs, insurance, license fees and all expenses for the trucks. But what of the depreciation?
It is settled law that plaintiffs cannot secure a judgment for the restitution of the $3,471.55 because of Correct's breach in the alleged contract, unless they restore it to the position in which it stood before the making of the contract  that is, it would seem, unless they compensate it for the use of the trucks on a quantum meruit basis. Restatement, Contracts, § 349(a) and (b); cf. Doughten v. Camden Building and Loan Ass'n, 41 N.J. Eq. 556, 561 (E. & A. 1886); Roberts v. James, 83 N.J.L. 492, 494 (E. & A. 1912); Williston, supra. It might be observed, in the interests of clarifying the problem, that to secure restitution in such a case, there need be no technical rescission of the contract; however, the result reached by the restitutionary remedy approximates that reached by rescission. Restatement, Contracts, § 349(a). The particular question here is whether Correct is barred from receiving such compensation by reason of the fact that there is no proof in the case as to the amount due on a quantum meruit basis. As already indicated, this point has not been raised. Does Correct have the burden of proving that it is entitled to an offset in the amount stated? Or, to the contrary  since plaintiffs must show that it is against good conscience for Correct to retain the $3,471.55  do they have the burden of proving the benefit accruing to them as a result of their use of the trucks? 5 Corbin, Contracts, 511, 512 (1951); see Schank v. Schuchman, 212 N.Y. 352, 106 N.E. 127, 128, 129 (Ct. App., opinion by Cardozo, J. 1914). On this last theory we might, as a matter of logic, place the burden on the plaintiffs. On the other hand, we might place it on Correct, having regard to the fact that we are dealing really with an offset; for we often have regard to the matter of practical convenience, when allocating among the parties the burden of proof on the various issues in a case.
We do not think we should answer these questions which are not raised by the parties; nor need we then consider *104 whether the 65% of the proceeds of the four routes which Correct received for many months, constitutes compensation for the use which plaintiffs had of the five trucks during the period. It is sufficient to say that we see no such manifest injustice as to justify our intruding into the case and reversing it on these points that have not been raised.
We turn next to Correct's argument that even if we assume that there was a meeting of minds of the parties on Contract No. 3, nevertheless there was no proof of a breach of contract. However, plaintiffs contend that Correct declared on April 1, 1952 and for some months thereafter, that it could not go through with Contract No. 3 because the routes and trucks were encumbered by a chattel mortgage; and the court in substance sustained plaintiffs' position. The court had found that the contract was payable, not at the rate of $100 a week (as plaintiffs had contended, namely, by way of a credit in that amount for Nawyn's managerial services), but at a time not definitely fixed, namely, upon the payment by the plaintiffs of the balance of the purchase price. If we regard Contract No. 3 as a binding contract with the purchase price payable by the plaintiffs at the indefinite time stated, then the fact that Correct could not give an unencumbered title to the trucks and (apparently) the routes either on April 1, 1952 when plaintiffs first offered to pay off their obligation, or within the subsequent five months of negotiations, was certainly sufficient to constitute a breach of the contract. If, on the other hand, we say that the parties never did adequately spell out Contract No. 3, even so we think the failure or inability to produce an unencumbered title warranted plaintiffs' claim for the restitution of the $3,471.55.
Correct next contends that if we assume that the parties agreed upon Contract No. 3, then they presumably included in the contract a clause like the following paragraph 8 found in Contract No. 1:
"(a) If this contract shall have been terminated in any manner other than by the payment of the full amount of the purchase price, then Company agrees that it will refund to Purchaser one-half of *105 such amount as Purchaser shall have paid on the contract, which is intended to compensate Purchaser for all costs in maintenance and operation of the truck."
We may assume that such a clause as this was contained in Contract No. 3. However, we do not think that Correct could by its own breach of contract take advantage of the clause. As we construe it, this provision was intended to be operable in case of plaintiffs' default, not in case of Correct's default. Indeed, Correct argues in its brief that the provision afforded redress by way of liquidated damages. Assuming that to be so, the clause surely was not intended to furnish Correct with damages in case of its own default.
It is next argued by Correct that assuming that Contract No. 3 was entered into as the court found, nevertheless it violated the statute of frauds since it was oral and not capable of performance within a year. N.J.S.A. 25:1-5(e). But there is no merit to this. The contract was capable of performance within the year, for, as the court found, no time for performance was fixed. It is argued also by Correct that the contract, being oral, is not enforceable under the Sale of Goods Act, N.J.S.A. 46:30-10. However the statute by its very terms does not apply if
"the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receives the same."
Here plaintiffs accepted and actually received the possession of the additional trucks and routes in February 1951, and the acceptance and receipt are referable to plaintiffs' dominion over the same under the alleged contract. Further as to both of these arguments, see Restatement, Contracts, § 355 holding generally that the fact that a contract is unenforceable under the statute of frauds or some similar statute does not prevent a party to the contract from securing restitution for moneys paid thereunder; Smith v. Administrators of Smith, 28 N.J.L. 208, 217 (Sup. Ct. 1860); Banker v. Henderson, 58 N.J.L. 26 (Sup. Ct. 1895); Sargent v. Realty Traders, 82 N.J. Eq. 331, 334 (E. & A. 1913); *106 Malone v. Romano, 95 N.J. Eq. 291, 296, 297 (E. & A. 1923); Bernstein v. Rosenzweig, 1 N.J. Super. 48, 53 (App. Div. 1948); Perlberg v. Geminder, 20 N.J. Super. 191, 195 (App. Div. 1952).
Correct contends finally that the sale was illegal because it was a contract for the sale of motor vehicles unaccompanied by a bill of sale as required by N.J.S.A. 39:10-5 and 39:10-9. As to the significance of the terms "sell" and "purchase" used in these statutes, see N.J.S.A. 39:10-2. A purchaser of a motor vehicle, who has grounds for rescinding the purchase, is not precluded by these statutes from securing restitution of the purchase money paid. Stein v. Scarpa, 96 N.J.L. 86 (Sup. Ct. 1921); cf. Shinn v. Cohen, 99 N.J. Eq. 418, 420 (E. & A. 1926); A. Cresci & Son, Inc., v. Steiker, 7 N.J. Super. 76, 80 (App. Div. 1950).
The judgment below will be affirmed.